PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MALINDA J. COOPER, | ) | |
| | ) | CASE NO. 5:14CV1897 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | **MEMORANDUM OF OPINION** |
| SOCIAL SECURITY, | ) | **AND ORDER RE: REVERSING** |
| | ) | **COMMISSIONER'S DECISION** |
| Defendant. | ) | [Resolving ECF No. 16] |

An Administrative Law Judge ("ALJ") denied Plaintiff Malinda J. Cooper's claim for supplemental security income ("SSI") benefits after a hearing held on March 5, 2013 in the above-captioned case. That decision became the final determination of the Commissioner of Social Security when the Appeals Council denied the request to review the ALJ's decision. The claimant sought judicial review of the Commissioner's decision, and the Court referred the case to Magistrate Judge James R. Knepp, II for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1). After both parties filed briefs, the magistrate judge submitted a Report and Recommendation (ECF No. 15) reasoning that the Commissioner's decision that Plaintiff is not disabled should be reversed and the case remanded to the Commissioner for further proceedings and a new decision based on the ALJ's failure to appropriately explain the lack of weight afforded to Plaintiff's treating physician. *See* ECF No. 15 at PageID #: 511-13.

(5:14CV1897)

## I.

When the magistrate judge submits a Report and Recommendation, the Court is required to conduct a *de novo* review of those portions of the Report and Recommendation to which an objection has been made. 28 U.S.C. § 636(b)(1). Objections to the Report and Recommendation must be specific, not general, in order to focus the court's attention upon contentious issues. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The primary issue then becomes whether substantial evidence supports the Commissioner's decision. The Court's review of the Commissioner's decision in the case at bar is limited to determining whether substantial evidence, viewing the record as a whole, supports the findings of the ALJ. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978); *Brown v. Astrue*, 649 F.3d 193, 195-96 (3d Cir. 2011) (discussing the standard of review a district court should apply when reviewing a magistrate judge's findings in an SSI claim). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (per curiam).

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would decide the matter differently. *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983)). Moreover, the decision must be affirmed even if

(5:14CV1897)

substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  This "standard allows considerable latitude to administrative decision makers.  It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).  However, in determining whether substantial evidence supports the ALJ's findings in the instant matter, the court must examine the record as a whole and take into account what fairly detracts from its weight. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court must also consider whether the Commissioner employed the proper legal standards. *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 243 (6th Cir. 1992).

Plaintiff's disability claim is based mainly upon her mental health and her inability to concentrate.  In order for the Commissioner to find that a plaintiff suffers from a disability for which she should receive benefits, the plaintiff must be unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Act further provides that:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

(5:14CV1897)

experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).

## II.

The Court has reviewed the Report and Recommendation (ECF No. 15) of the magistrate judge *de novo*.  The Court has also considered Defendant's Objections (ECF No. 16) and Plaintiff's Response (ECF No. 17).  Defendant objects to the magistrate judge's explanation that the ALJ did not give sufficiently specific reasons for discounting the opinion from K. Scott Pacer, M.D., Plaintiff's treating physician at Coleman Professional Services.  ECF No. 16 at PageID #: 515.  Plaintiff argues that the good reasons Defendant credits to the ALJ for discounting the opinions of Dr. Pacer were not reasons articulated by the ALJ.  ECF No. 17 at PageID #: 520.

On October 31, 2008, Plaintiff suffered a Traumatic Brain Injury ("TBI") when she was hit by a vehicle while out walking.  Plaintiff was 17 years old at the time of the accident.  ECF No. 11 at PageID #: 322-23.  Dr. Pacer performed multiple mental health examinations of Plaintiff, beginning on September 9, 2009.  ECF No. 11 at PageID #: 358-60.  On February 14, 2012, Dr. Pacer completed a Medical Opinion Re:  Ability to Do Work-Related Activities (Mental) form.  ECF No. 11 at PageID #: 388-90.  He opined Plaintiff was within the "Poor or None" category for the following activities listed under "Mental Abilities and Aptitude Needed to Do Unskilled Work ":

Understand and remember very short and simple instructions;
Maintain attention for two hour segment;
Maintain regular attendance and be punctual within customary, usually strict tolerances;

(5:14CV1897)

>Work in coordination with or proximity to others without being unduly distracted;
>Respond appropriately to changes in a routine work setting; and,
>Deal with normal work stress.

ECF No. 11 at PageID #: 388.  He also opined Plaintiff was within the "Poor or None" category for the following three of four activities listed under "Mental Abilities and Aptitudes Needed to Do Semiskilled and Skilled Work":

>Understand and remember detailed instructions;
>Carry out detailed instructions; and,
>Set realistic goals or make plans independently of others.

ECF No. 11 at PageID #: 389.  Dr. Pacer noted Plaintiff's mood disorder and ADHD before the TBI, and noted that the accident made her conditions worse.  ECF No. 11 at PageID #: 389.  Dr. Pacer also noted "[s]he couldn't understand how to call her insurance company to deal with their not covering her meds[,] and needed Coleman staff to assist her [because] it was too overwhelming."  ECF No. 11 at PageID #: 389.  Lastly, Dr. Pacer opined Plaintiff would be absent from work on the average "[a]bout twice a month" due to her impairments or treatment. ECF No. 11 at PageID #: 390.

Plaintiff's treatment with Dr. Pacer continued, with repeated notes of the assistance she received in college and no changes in her diagnosis or Global Assessment of Functioning ("GAF") score of 60.[1]  ECF No. 11 at PageID #: 395-410.  A status evaluation by Dr. Pacer on

---

[1] The GAF scale is used to track "the clinical progress of individuals in global terms, using a single measure.  The GAF scale is to be rated with respect only to psychological, social, and occupational functioning."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (rev. 4th ed. 2000).  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.

5

(5:14CV1897)

November 5, 2012 again noted Plaintiff's mood swings, improvement with her temper, but "she has been feeling really paranoid." ECF No. 11 at PageID #: 412.  Plaintiff's diagnosis did not change but her GAF score dropped down to 52.  ECF No. 11 at PageID #: 415-16.  Another evaluation on December 10, 2012 again noted her mood changes and raised her GAF score to 55. ECF No. 11 at PageID #: 418-22.

> The ALJ provided little weight to Dr. Pacer's opinion stating:
>
> Treating source Dr. Scott Pacer, M.D., said [Plaintiff] has moderate to marked limits in virtually every area of mental functioning.  He said the claimant has poor memory and would miss work about twice a month secondary to her medical impairments (Exhibit 7F) [ECF No. 11 at PageID #: 386-90].  I give this opinion little weight as it is not consistent with the medical evidence of record.  Further, this opinion is strongly contradicted by the claimant's post onset work and her ability to attend college.

ECF No. 11 at PageID #: 74.

As a treating source, a special rule applies to the opinions of Dr. Pacer.  In particular, the ALJ was required to give his opinions "controlling weight" if he found "the opinion[s] 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* former 20 C.F.R. § 404.1527(d)(2) now § 404.1527(c)(2)); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Under the treating-source rule, when an ALJ finds that a treating physician's opinion is not entitled to "controlling weight," there remains a rebuttable presumption that the opinion is entitled to "great deference." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see* SSR 96-2p, 1996 WL 374188, at *4.  To rebut the presumption, the ALJ must show that

6

(5:14CV1897)

substantial evidence supports not deferring to the treating source. *See Id.* at 246. Furthermore, a procedural right accompanies the deference owed to treating sources: the ALJ must provide the claimant and a reviewing court with "good reasons" for not deferring to a treating-source opinion. *See Gayheart*, 710 F.3d at 376; *Rogers*, 486 F.3d at 243; *Wilson*, 378 F.3d at 544.

Citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision), Defendant argues that "[a]lthough the ALJ could have done a better job of describing those reasons more fully, the ALJ's decision should be read as a whole." ECF No. 16 at PageID #: 515. Defendant points out that the ALJ described the medical findings and activities of daily living that contradicted Dr. Pacer's opinion:

> As far as her mental health is concerned, the claimant receives mental health treatment from Coleman Professional Services for ADHD and Mood Disorder NOS. The claimant receives counseling and medication management. In September 2010, the claimant reported that her attention and concentration are better on her medication. She was enrolled as a college freshman and receiving extra time for exams as an accommodation. She completed her homework and schoolwork without difficulty; she stayed on task and focused well. The claimant's improvements continued through 2011 (Exhibit 4F) [ECF No. 11 at PageID #: 327-60]. By February 2012, the claimant no longer lived with her parents, but on her own at a place closer to campus. She took care of her personal and hygiene needs. Her mood remained well; no depression, moodiness, mood swings, irritability, or anger. The following June, the claimant reported socializing well with friends. She awaited entry into a pre-physical therapy program, worked on her prerequisites and attained mostly "A" grades (Exhibit 9F) [ECF No. 11 at PageID #: 394-410]. However, by December 2012, the claimant lived at home again with her mother and stepfather, but has difficulty in her relationship with her stepfather. She also espoused issues between the stepfather and her boyfriend. She felt some stress from family and school, but her mood

7

(5:14CV1897)

>remained stable.  She continued to have good concentration, attention, and focus (Exhibit 10F) [ECF No. 11 at PageID #: 411-22].

ECF No. 11 at PageID #: 73.  "[M]erely listing the relevant evidence does not suffice.  The ALJ must bridge the gap between the record evidence and why a treating physician's opinion is not entitled to great deference."  Jones v. Comm'r of Soc. Sec., No. 12-10502, 2013 WL 1189923, at *3 (E.D. Mich. March 22, 2013).

The Court concludes the ALJ did not provide a sufficient explanation regarding the weight afforded to Dr. Pacer's opinion.  The ALJ cites no examples to show how Dr. Pacer's opinion is inconsistent with the medical record or Plaintiff's part-time work and college attendance with accommodations.  The statement that Dr. Pacer's opinion "is not consistent with the medical evidence of record," ECF No. 11 at PageID #: 74, is a boiler-plate finding with no specific reasoning to support the conclusion.  See Rogers, 486 F.3d at 243 (finding that not only must an ALJ identify the reasons for discounting an opinion, she must "explain[] precisely how those reasons affected the weight").  "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011) (citing SSR 96-2p, 1996 WL 374188, at *5).

A failure to satisfy the good reasons requirement is grounds for remand unless the failure was harmless error.  Wilson, 378 F.3d at 547.  The Court concludes the failure to give good reasons in the case at bar is not harmless error as argued by Defendant.  ECF No. 16 at PageID #: 517-18.  See Warrick v. Colvin, No. 3:13-cv-00346, 2015 WL 5254425, at *4 (M.D. Tenn. Sept.

8

(5:14CV1897)

9, 2015) (finding the ALJ's failure to follow the good reasons requirement was not harmless error and was grounds for remand).

### III.

Accordingly, Defendant's Objections (ECF No. 16) are overruled and the Report and Recommendation (ECF No. 15) of the magistrate judge is hereby adopted. The decision of the Commissioner is reversed and the case remanded.

    IT IS SO ORDERED.

| | |
|---|---|
| September 16, 2015 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |